MOEEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
Telephone: (510) 500-9994
Email: hanni@mlf-llp.com

Attorneys for Natali Cisneros

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NATALI CISNEROS,<br><br>Defendant. | **Case No.:** 4:21-CR-00147-HSG<br><br>**DEFENDANT'S DISPOSITION MEMORANDUM**<br><br>**Court:** Courtroom 2, 4th Floor<br>**Hearing Date:** October 2, 2024<br>**Hearing Time:** 2:30 p.m. |

**INTRODUCTION**

Mr. Cisneros entered an admission to allegations 1-4 in the amended Form 12 petition, filed on June 27, 2024. *See* Dkt. 76, 84. By agreement of the parties, allegation 5 will be dismissed at sentencing. Mr. Cisneros submits this memorandum in support of the parties' joint request that the Court revoke Mr. Cisneros' supervised release and sentence him to serve two months in custody to be followed by a 24-month term of supervised release.

**STATEMENT OF FACTS**

A. **Mr. Cisneros's History and Characteristics.**

Mr. Cisneros was born in Honolulu, Hawaii in 1988. Presentence Investigation Report ("PSR") ¶ 49. His parents were never married and separated when he was an infant. PSR ¶ 46. His father eventually remarried and lives with Mr. Cisneros' stepmother in Woodside. *Id.* His mother, however, struggled with drug addiction and found herself in and out of jail in Hawaii. PSR ¶¶ 44-45. Mr. Cisneros does not have many memories of his mother outside of visiting her in custody. PSR ¶ 48. In 2014, his mother was convicted in Hawaii federal court for her involvement in a methamphetamine trafficking conspiracy and sentenced to serve 10 years in the BOP. *See United States v. Fauolo*, 1:14-CR-00828-LEK (D. Hawaii). She was released from the BOP in 2021 and is currently on supervised release.



With neither of his parents in the picture growing up, Mr. Cisneros was raised by his maternal grandmother in San Francisco who was a homemaker and supported herself with social security and government assistance. PSR ¶ 46. He turned to sports to keep himself occupied, playing amateur football. PSR ¶ 49. He graduated high school and worked sporadic jobs. PSR ¶¶ 47, 49, 56-60. But he occasionally found himself in trouble with the law, with a series of arrests for minor crimes between 2017 and 2020 when he was between 18 and 21 years old. PSR ¶¶ 32-33, 37-42. His only other felony

conviction before his federal case came in 2017, when he was 18 years old, he stole some bottles of alcohol from a Safeway and refused to pull over when directed to do so by police. PSR ¶ 32. He was placed on probation for three years and sentenced to serve 150 days in the Napa County jail, of which he only served approximately 75 days because of good time credits.

**B.     The Original Criminal Case.**

The incident that landed Mr. Cisneros in Court started on April 29, 2020, when his cousin Reno Fiapoto was shot and killed on the Bay Bridge.[1] In the weeks that followed, his cemetery in Colma became the site of violence, including other shootings.[2] Mr. Cisneros, who had never handled or possessed a firearm before, felt the need to protect himself. PSR ¶ 18. As he noted in the letter to the Court he submitted in his original sentencing hearing, "I was going through a lot of emotions" and after having lost so much, including his mother's presence, "didn't know what I had to live for." Dkt. 35-1, Exh. A.

On May 16, 2020, in Pittsburg, Mr. Cisneros was driving dangerously with a friend when police attempted to pull him over. PSR ¶ 6. Because he was on probation, he was worried he would be arrested and sent to jail and so instead of stopping he continued driving. PSR ¶¶ 7-9. He ultimately crashed the car and then ran out on foot before being apprehended by police. PSR ¶¶ 10-11. A firearm was found in the car. PSR ¶¶ 12-13. Mr. Cisneros was booked in the Contra Costa County jail and released on bail, as he was originally prosecuted in state court for being a felon in possession of a firearm. PSR ¶ 14. The state case would later be dismissed when the federal government decided to prosecute Mr. Cisneros.

On November 6, 2020—almost six months after his arrest in Pittsburg—a federal criminal complaint was filed charging Mr. Cisneros with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). Dkt. 1. Mr. Cisneros was arrested on the complaint three months

---

[1] *See* Rick Hurd, "Fatal shooting at San Francisco end of Bay Bridge; I-80 closed for hours," *Mercury News*, Apr. 29, 2020, *available at* https://www.mercurynews.com/2020/04/29/fatal-shooting-at-san-francisco-end-of-bay-bridge-i-80-closed-for-hours/.

[2] *See* Nate Gatrell, "Authorities link Bay Bridge freeway killing, cemetery shootings to SF 'gang feud,'" *Mercury News*, Sep. 2, 2020, *available at* https://www.mercurynews.com/2020/09/02/authorities-link-bay-bridge-freeway-killing-cemetery-shootings-to-sf-gang-feud/.

1   later on January 22, 2021, while he was in Las Vegas, Nevada visiting family. PSR ¶ 4.

2       At Mr. Cisneros' initial appearance in the Northern District of California on March 1, 2021, he
3   was released on an unsecured appearance bond. Dkt. 3, 4. While on pretrial release, Mr. Cisneros
4   lived with his wife and her mother in Antioch, and provided in home health services to his disabled
5   mother in law. He was also permitted to travel out of the district in order to play amateur football.
6   Dkt. 13, 22, 26, 28, 32, 41. He never had any issues or violations while on pretrial release.

7       On May 5, 2021, Mr. Cisneros' pleaded guilty to an Information charging him with being a
8   felon in possession of an ammunition with a plea agreement with the government. PSR ¶¶ 2-3. On
9   August 21, 2021, the Court sentenced Mr. Cisneros to serve 15 months in the Bureau of Prisons
10  ("BOP"), to be followed by a 36 month term of supervised release. Dkt. 39, 42. Mr. Cisneros was
11  permitted to self-surrender to the BOP which he did on November 16, 2021.

12  **C.**   **Nature and Circumstances of the Supervised Release Violations.**

13      Mr. Cisneros' term of supervised release began on October 25, 2022. Once he got home, he
14  resumed providing in home care for his mother in law. Approximately one year into his term of
15  supervised release, a Form 12 petition was filed on October 5, 2023, alleging Mr. Cisneros violated
16  the terms of his supervised release after he was seen visiting the gravesite of his cousin, Reno
17  Fiapoto, and was found associating with a gang member. Dkt. 52. The Court modified Mr. Cisneros'
18  term of supervised release by requiring him to complete 50 hours of community service.

19      On October 25, 2023, a Form 12 petition was filed alleging Mr. Cisneros had violated the terms
20  of his supervised release by again associating with gang members, people who are again members of
21  Mr. Cisneros' large extended family. Dkt. 55. Mr. Cisneros was present when a search warrant was
22  executed at a relative's home, and although weapons were recovered in the house, there is no
23  allegation that Mr. Cisneros had any knowledge or involvement with the weapons, and he was never
24  arrested or charged with any criminal conduct in either state or federal court.

25      A summons was issued and Mr. Cisneros made his initial appearance on the Form 12 petition
26  on November 29, 2023 and has remained out of custody while his case has been pending. Dkt. 60. On
27  February 14, 2024, with Mr. Cisneros' agreement, his conditions of release were modified to place
28  him on location monitoring as a sanction, with a secondary goal of allowing Mr. Cisneros to

demonstrate he could comply with the terms of his supervised release, find work and hopefully have the Court take judicial notice of the violations. Dkt. 65, 67. The location monitoring condition was extended in May 2024 to allow Mr. Cisneros additional time to find a more stable job. Dkt. 70, 73.

Finally, another Form 12 issued on June 27, 2024 after Mr. Cisneros was alleged to have shoplifted a pair of shoes in Brentwood. Dkt. 76. Again, a summons issued and Mr. Cisneros appeared as directed. He has not been arrested or charged in any criminal case as a result of the allegation. The parties reached a joint resolution whereby the government would not pursue the shoplifting allegation, and Mr. Cisneros would agree to serve two months in custody and being a new term of supervised release.

## SENTENCING ARGUMENT

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000) (citing 18 U.S.C. § 3553(a)(2)(D)). At sentencing, the "overarching statutory charge for a district court is to 'impose a sentence sufficient but not greater than necessary'" to reflect the factors detailed in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting 18 U.S.C. § 3553(a)). In a supervised release violation sentencing, Congress directed courts to consider only some of the § 3553(a) factors. Congress specifically directed district courts *not* to consider the factors set forth in § 3553(a)(2)(A), which are the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3583(e) (omitting § 3553(a)(2)(A)). As a result, both the U.S. Sentencing Commission and the Ninth Circuit have explained "the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." United States Sentencing Guideline ("U.S.S.G.") Ch. 7, Pt. A (2016); *see also United States v. Miqbel*, 444 F.3d 1173, 1182 (9th Cir. 2006).

Here, the relevant § 3553(a) factors this Court must consider in a supervised release revocation proceeding support the joint recommendation of the parties for a two month custodial sentence to be followed by 24 months of supervised release.

A. **The Need to Deter Criminal Conduct and Protect the Public**

A two month sentence is sufficient to punish Mr. Cisneros for breaching the Court's trust and sends a strong message that he has to take his supervised release obligations seriously. That sentence also recognizes that Mr. Cisneros has reported to the probation office as directed, not tested positive for any controlled substances and has not been arrested, charged or convicted for any other crimes while on supervised release. Moreover, a two month sentence leaves 24 months of supervision for Mr. Cisneros to work again with the probation office on living a productive and law abiding life.

B. **Providing Training, Medical Care or Other Treatment**

Congress has recognized that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Instead, "Supervised release, unlike incarceration, provides individuals with post confinement assistance." *Johnson*, 529 U.S. at 60. Although Mr. Cisneros does not have drug abuse or mental health issues, he can still benefit from the supervision of the probation office through cognitive behavioral programs and job training and placement assistance.

C. **The Guidelines Sentencing Range and Sentencing Commission's Policy Statements**

As all parties agree, the allegations in the Form 12 petition that Mr. Cisneros has admitted to are Grade C violations. At the time of his original sentencing, Mr. Cisneros was in Criminal History Category III. Thus, the sentencing range is between 5-11 months. Given the nature of the violations, the parties are jointly recommending a two month sentence to be followed by 24 months of supervised release.

D. **Avoiding Unwarranted Sentencing Disparities**

While the Court must avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, the Ninth Circuit has explained sentencing courts must also "avoid 'unwarranted similarities among [defendants] who were not similarly situated.'" *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 55 (2007) (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

The joint recommendation of a two month sentence takes into account Mr. Cisneros's history and characteristics, including the fact the violations in the Form 12 petition do not involve a failure to

report to probation, possession of drugs or firearms, or any new arrests or convictions.

**CONCLUSION**

Mr. Cisneros requests this Court follow the joint recommendation of the parties, revoke his supervised release and sentence him to two months in custody followed by 24 months of supervised release. He also requests the Court recommend the BOP house him at Santa Rita jail or as close to Northern California as possible. Finally. He respectfully requests the Court permit him to self-surrender.

Dated: October 1, 2024

Respectfully submitted,

MOEEL LAH FAKHOURY LLP

Hanni M. Fakhoury
Attorneys for Natali Cisneros

DEFENDANT'S DISPOSITION MEMORANDUM
*United States v. Cisneros*, 4:21-CR-00147-HSG

6